IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE LEDBETTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 CV 9302 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant City of Chicago's motion to dismiss Plaintiff Jermaine Ledbetter's complaint [10]. For the reasons set forth below, the Court grants Defendant's motion to dismiss [10] and denies as moot Defendant's motion for leave to file supplemental authority [16].

**I.   Background[1]**

Plaintiff Jermaine Ledbetter's one-count complaint against Defendant City of Chicago alleges violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (the "ADEA"), on the grounds that the City made out-of-rank eligibility preferences (which occurred before Plaintiff turned 40) and removed Plaintiff from the Chicago Police Department's ("CPD") hiring (or referral) eligibility list after he turned 40. Plaintiff states that he seeks to "recover damages against the City for the violation of his rights under the [ADEA]."

In his Complaint, Plaintiff alleges that "[i]n October 2010, the CPD published a Job Announcement for the position of police officers", that Plaintiff "answered the City's Job

---

[1] The facts are drawn from Plaintiff's complaint. For the purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Announcement and took the 2010 Chicago Police Officer Examination ("Exam") offered by the City in December of 2010", and that"[s]hortly after taking the Exam, [plaintiff] received a letter from the City stating that he had passed the Exam and was an eligible candidate for hire." Plaintiff further alleges that "[t]he Announcement provided that Applicants who passed the written exam, met the minimum qualifications, and attached the appropriate required documentation to their application would be placed on a referral list in lottery order and be considered Candidates for hire." Plaintiff alleges that he was assigned lottery number 590 out of a total of 6,428 eligible candidates. Plaintiff was "37 years of age when he took the Exam in December of 2010." He admits that "[t]he City stated in the Job Announcement that per municipal code of the City of Chicago, no person may be appointed as a Probationary Police Officer after their 40th birthday."

To support his age discrimination claim, Plaintiff alleges that "the City failed to ever refer [Plaintiff] as an eligible candidate for the CPD", that "the City bypassed [him] and referred candidates with higher lottery numbers while failing to refer [Plaintiff] despite his lower lottery number," that "[o]n July 11, 2013, one day after having achieved his 40th birthday, [Plaintiff] received a letter from the City informing him that he reached the maximum proscribed age of 40 and was therefore being removed from the referral eligibility list", and that "the City purposefully violated their [sic] own Job Announcement and Hiring Plan * * * to extend employment opportunities to persons younger than [Plaintiff]."

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule

Announcement and took the 2010 Chicago Police Officer Examination ("Exam") offered by the City in December of 2010", and that"[s]hortly after taking the Exam, [plaintiff] received a letter from the City stating that he had passed the Exam and was an eligible candidate for hire." Plaintiff further alleges that "[t]he Announcement provided that Applicants who passed the written exam, met the minimum qualifications, and attached the appropriate required documentation to their application would be placed on a referral list in lottery order and be considered Candidates for hire." Plaintiff alleges that he was assigned lottery number 590 out of a total of 6,428 eligible candidates. Plaintiff was "37 years of age when he took the Exam in December of 2010." He admits that "[t]he City stated in the Job Announcement that per municipal code of the City of Chicago, no person may be appointed as a Probationary Police Officer after their 40th birthday."

To support his age discrimination claim, Plaintiff alleges that "the City failed to ever refer [Plaintiff] as an eligible candidate for the CPD", that "the City bypassed [him] and referred candidates with higher lottery numbers while failing to refer [Plaintiff] despite his lower lottery number," that "[o]n July 11, 2013, one day after having achieved his 40th birthday, [Plaintiff] received a letter from the City informing him that he reached the maximum proscribed age of 40 and was therefore being removed from the referral eligibility list", and that "the City purposefully violated their [sic] own Job Announcement and Hiring Plan * * * to extend employment opportunities to persons younger than [Plaintiff]."

## II.     Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule

12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.")

## III. Analysis

The ADEA prohibits discrimination on the basis of age; however, it has its limits, two of which are relevant here. First, the ADEA does not protect persons under 40. Second, under certain circumstances, the ADEA allows a local government to refuse to hire police officers on the basis of age. As set forth below, Plaintiff makes two fatal admissions in his opposition brief

3

(which are consistent with his complaint). First, he admits that he was "not covered under the provisions of the [Age Discrimination in Employment Act ("ADEA")]" when he was under the age of 40. Pl. Resp. at 4. Second, Plaintiff also admits that he is "not contesting the validity of the City's municipal ordinance that prohibits the hiring of individuals over the age of 40, M.C.C. § 2-152-410(e)." *Id.* at 5. As set forth below, these admissions, along with the allegations in Plaintiff's complaint, bar Plaintiff's instant ADEA lawsuit against the City.

### A. Persons Under 40

To establish a claim for age discrimination under the ADEA, a plaintiff must show that: (1) he was a member of the protected class (age 40 or over); (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002). Here, Defendant contends that Plaintiff's ADEA claim fails because it relates to conduct which occurred before he turned 40 (and thus he was not a member of the age-protected class). See *Hamilton v. Caterpillar Inc.*, 966 F.2d 1226, 1227 (7th Cir. 1992) (affirming the district court's dismissal of age discrimination suit because the "ADEA allows individuals only 40 years and older to sue."). Plaintiff contends that "[t]he City has offered no explanation nor cited any authority that grants the City the power to refuse to refer Plaintiff for hiring over a three year period." Pl. Resp. at 8-9.

Plaintiff's argument (and, in a sense, entire theory) misses the mark. The City has cited several cases which hold that the ADEA does not recognize a claim for reverse age discrimination. See *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 584 (2004) (holding that the ADEA does not provide a remedy for reverse age discrimination); *Hamilton*, 966 F.2d at 1227. This is the "authority" by which the City avoids liability for alleged age

discrimination as to conduct which occurred during the three years preceding Plaintiff's fortieth birthday. The *Hamilton* court reasoned that "[i]f the [ADEA] were really meant to prevent reverse age discrimination, limiting the protected class to those 40 and above would make little sense." *Id.* Although Plaintiff alleges that the City purposefully failed to refer him as an eligible candidate for the CPD, and that the City instead referred younger candidates with higher lottery numbers, he admits that this alleged conduct took place before he turned 40, thereby pleading himself out of court. In short, the inescapable fact is that Plaintiff was not a member of the age-protected class when the supposed violations took place. Therefore, the only allegations that can arguably support an ADEA claim are those that describe the City's conduct after Plaintiff reached 40.

### B. Police Officer Exemptions

With respect to Plaintiff's ADEA claim as it relates to conduct which took place after he reached the age of 40, Plaintiff alleges that on July 11, 2013, the day after he turned 40, he "received a letter from the City informing him that he reached the maximum proscribed age of 40 and was therefore being removed from the referral eligibility list." The City contends that, subject to certain requirements (which it contends are met here), the ADEA exempts from liability state and local governments that have age-based hiring restrictions in place for their firefighters and law enforcement officers.

As Plaintiff concedes, the ADEA permits the City to set a maximum age for new police officers. 29 U.S.C. § 623(j). Specifically, § 623(j) permits the City to refuse to hire an individual over the age of 40 if he has attained the age of hiring in effect on the date of such refusal to hire under an applicable City ordinance enacted after September 30, 1996, and if the restriction was made pursuant to a bona fide hiring plan that is not a subterfuge to the evade the

5

purposes of the ADEA. In 2000, after the enactment of the 1996 ADEA amendments, the City set a maximum age for new police officers, adopting an ordinance that prohibits it from hiring anyone over 40 to be a police officer. Chicago Municipal Code § 2-152-410(e) (2000) (stating in pertinent part that "no person above the age of 40 may receive initial appointment as a probationary career service police officer with the police department"). Refusing to hire an over-40 applicant is thus not actionable under the ADEA, as long as the City's ordinance is a "bona fide hiring plan," rather than a "subterfuge," and the decision not to hire was "pursuant to" the ordinance. 29 U.S.C. § 623(j)(2).[2]

Because § 623(j) is an affirmative defense, the City bears the associated burdens of proof and persuasion. *Davis v. Ind. State Police*, 541 F.3d 760, 763–64 (7th Cir. 2008). Although a motion to dismiss under Rule 12(b)(6) ordinarily should not be granted on the basis of an affirmative defense, dismissal is appropriate if Plaintiff's complaint, and his arguments in support, conclusively demonstrate that his claim is not legally viable. See *Minch v. City of Chicago*, 363 F.3d 615, 618 (7th Cir. 2004) ("[W]e conclude that the particular theory of subterfuge that the plaintiffs pursue in this case is not viable. We accordingly remand with directions to dismiss their ADEA claims.").

"A plan is 'bona fide' when it is real rather than a fable spun for the occasion." *Davis*, 541 F.3d at 762. The municipal ordinance, adopted in 2000, is real—it has been codified for the

---

[2] In its opening brief, the City specified that the municipal ordinance was the pertinent "hiring plan" for purposes of § 623(j). Plaintiff's response argues that the City's job posting constitutes the City's hiring plan, and that the City acted inconsistently with the job posting in making its hiring decisions. Again, Plaintiff's argument misses the mark. The ordinance, not the job posting, is the hiring plan to be assessed under § 623(j) because there is no dispute that it was the ordinance that set the maximum age for new police officers and when Plaintiff reached that age, he was ineligible for referral. Further, the job posting is merely an advertisement to the public to notify interested persons of the CPD's hiring needs. The posting is not titled "Hiring Plan", it does not even include the term "Hiring Plan", and it even informs applicants that "[p]ursuant to the Municipal Code of Chicago, no person may be appointed as a probationary Police Officer after their 40th birthday."

last 14 years—and, further, Plaintiff agrees that the ordinance is valid. An age-based prohibition on hiring is a "subterfuge" if it is used to achieve a different form of discrimination—if used, for example, to pay older employees less, or to retaliate against employees who oppose age discrimination. *Minch*, 363 F.3d at 629–30. Plaintiff repeatedly alleges just the opposite—that the City used its ordinance for its specific purpose of rejecting older applicants. In effect, Plaintiff concedes the ordinance was not a subterfuge to violate the purposes of the ADEA (*i.e.*, to discriminate impermissibly on account of age in some aspect of the employment relationship other than setting a maximum age for new police officers).

The City's decision to reject Plaintiff was "pursuant to" its plan if application of the plan dictated that outcome. *Davis*, 541 F.3d at 763. If instead the City made exceptions by sometimes hiring police officers over 40, then the decision to reject Plaintiff could have been based on some consideration other than the plan. See *Davis*, 541 F.3d at 763–64. Again, Plaintiff alleges just the opposite. The decision to reject Plaintiff was made "pursuant to" the ordinance.

Plaintiff further alleges that the City purposefully delayed his application, so that as soon as he turned 40, it could terminate his application pursuant to the ordinance. But even if that were true, his application was terminated once he turned 40 pursuant to a bona fide hiring plan that was not a subterfuge used to achieve prohibited discrimination. And the ADEA provides no remedy for the three-year delay as applied to Plaintiff, because, as noted previously, it only protects people over 40. 29 U.S.C. § 631(a); see *Hamilton v. Caterpillar, Inc.*, 966 F.2d 1226, 1227 (7th Cir. 1992) (noting that ADEA's protected class is limited to those 40 and above).

In sum, while the ADEA makes unlawful the failure to hire or the discharge of an individual because of his age, it contains an exemption for state and local governments concerning the employment of firefighters and law enforcement personnel. The unambiguous

and express terms of § 623(j) exempt the City from the ADEA's ban on age discrimination. As the Seventh Circuit recognized in *Minch*, and most recently in *Davis*, this exemption expressly permits the City to refuse to hire police officers over the age of 40. To state a viable age discrimination claim against the City, Plaintiff must prove that "the City was using [age-based hiring restrictions] as a vehicle to commit some other type of age discrimination forbidden by the ADEA." *Id.* Plaintiff has not pled these allegations in his complaint or any others to plausibly suggest subterfuge; therefore, he has not stated a claim for age discrimination against the City.

## IV. Conclusion

For these reasons, the Court grants Defendant's motion to dismiss [10] and dismisses without prejudice Plaintiff's single count of age discrimination. In the event that Plaintiff believes that he can cure the deficiencies in his complaint—consistent with counsel's obligations under Rule 11—the Court gives Plaintiff 21 days to file a motion for leave to file an amended complaint, explaining why such an amendment would not be futile. The Court denies as moot Defendant's motion for leave to file supplemental authority [16].

Dated: September 15, 2014

Robert M. Dow, Jr.
United States District Judge

8